# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

CIVIL ACTION NO. 3:16-CV-00553-JHM

HUGH P. MCLEISH                                               PLAINTIFF

v.

ELITE AUDIO VISUAL SOLUTIONS                           DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion for summary judgment by defendant Elite Audio Visual Solutions ("Elite"). (DN 18.) Fully briefed, this matter is ripe for decision. For the following reasons, the motion is **GRANTED**.

### I. BACKGROUND

This case arises from Elite's employment of plaintiff Hugh P. ("Pat") McLeish from December 17, 2012, to October 29, 2015. When McLeish was hired by Elite, he was 49 years old. (Dep. McLeish [DN 18-4] at 27:19–21.) McLeish worked for Elite as the director of audio visual at two hotels in Nevada and California before being transferred to Louisville in May 2015. (*Id.* at 27:22–28:2, 40:16–42:3, 44:11–18.) He worked at three hotels while in Louisville, eventually becoming the "director of audio visual" at the Crowne Plaza on July 1, 2015. (*Id.* at 56:6–8.) McLeish was the highest-ranking Elite employee at the Crowne Plaza and reported directly to Chad Lucas, the CEO of Elite. (*Id.* at 74:2–5, 61:10–14.)

Beginning "the first day" of his employment at the Crowne Plaza, Elite began to receive complaints from Amy Falkenstein, the director of catering at the Crowne Plaza, about McLeish's performance of his on-site duties. (*Id.* at 75:21–77:9.) These complaints were "occasional but ongoing" from July onward. (*Id.* at 77:1–3.) Emails sent by Falkenstein at the time these issues arose show that McLeish and his staff regularly failed to provide the necessary audio and visual

equipment to meeting rooms in a timely manner and that Falkenstein was not satisfied with Elite's overall performance. (Falkenstein September 30 Email [DN 18-10] at 2; Falkenstein October 8 Email [DN 10-14] at 1.) Following receipt of these complaints, Elite, through its CEO Lucas, attempted to implement changes that would rectify some of these issues, including changes to when McLeish was to have audio and visual equipment set up and how the Crowne Plaza would be staffed. (Dep. McLeish [DN 18-4] at 102:6–105:7; Lucas October 8 email [DN 18-15] at 1–4.)

Even after these changes were made, Lucas continued to receive complaints about McLeish's performance at the Crowne Plaza. (Falkenstein October 12 Email [DN 18-16] at 1.) On October 14, McLeish sent Lucas an email in which he stated that "[n]o one is happy with the job I am doing here, including me. I am no longer certain what that job is, what the priorities are, or where it is going." (McLeish October 14 Email [DN 18-17] at 1.) He continued that he saw "three scenarios," which included a "[w]orst case scenario" of a "[d]ramatic departure. I slam my keys on [Falkenstein]'s desk." (*Id.*) His "[b]est case scenario" was that "[e]verything works out this week. I continue here until the end of the year." (*Id.*) His "[r]ealist scenario" was that he "give [his] 30-45 day notice. You use this time to hire, train and acclimate my replacement. I pledge to my absolute best to initiate the changes in your plan for here . . . I will do everything I can to make for a smooth transition." (*Id.*) He concluded by stating that "[i]t is very important to me to leave ELITE on the best note possible. I hope we can make that happen." (*Id.*)

After receiving this email, McLeish and Lucas spoke on the phone, and Lucas states that he and McLeish agreed that McLeish would remain at his position until the end of 2015. (Aff. Chad Lucas [DN 18-12] ¶ 5.) On October 14, McLeish also received an email from Jim Forrest,

the director of event technology at the Galt House for Elite, offering advice as to how he runs his operation and how it could be implemented at the Crowne Plaza. (Forrest October 14 Email [DN 18-18] at 1–4.) However, Lucas continued to receive complaints from Falkenstein and other Crowne Plaza staff over the next few days. (Falkenstein October 15 Email [DN 18-19] at 1; Falkenstein October 20 Email [DN 18-20] at 1; Falkenstein October 20 Email [DN 18-21] at 1.) In response to these complaints, Elite president Lawrence Williams visited the Crowne Plaza on October 21 and 22 and met with McLeish. (Williams October 22 Email [DN 18-22] at 2–4.) Williams observed that McLeish's staff felt that they needed more training but McLeish could not offer it to them; that the equipment storeroom "was not clean, organized or secured;" and that overall his "observation of Pat and his operation was very disappointing[, f]rom the lack of attention to details, his lack of organization, enthusiastic but poorly trained staff, unprofessional emotional state of mind and his lack of timeliness and absents on the floor[.]" (*Id.*)

On October 23, McLeish then emailed Lucas and stated that Williams' visit "did not change my perception that this is not a winning situation for me. This position needs a great administrator. I am not that person." (McLeish October 23 Email [DN 18-23] at 1.) He reiterated that he would "stay at [his] job through the remainder of 2015." (*Id.*) McLeish denies that this was a letter of resignation, but he did testify that he was concerned that he might be relieved of his position at this point "because [he] had been getting repeated complaints from [Falkenstein], and the visit with [Williams] did not go that well." (Dep. McLeish [DN 18-4] at 133:25–134:12.)

On October 28, McLeish sent an email to four Elite employees, including Jim Forrest, requesting certain pieces of equipment to be set up that night. (McLeish October 28 Email [DN 18-25] at 2–3.) Forrest replied with concerns about McLeish's plan to obtain the equipment,

3

chastising McLeish for the failure to arrange for the equipment to be brought in sooner and seeking an explanation for the miscommunication. (*Id.* at 2.) McLeish then replied, "How about fuck off Jim. I will not be [coming] to get that gear after all." (*Id.* at 1.) On either October 29 or 30, McLeish spoke on the phone to Lucas who told him that he was "letting [him] go." (Dep. McLeish [DN 18-4] at 175:18–23; Lucas Aff. [DN 18-12] ¶ 7.)

McLeish sent an email to Nicole Duran, Elite's vice-president of finance, on November 9, in which he stated that there was some confusion over how his employment ended. (McLeish November 9 Email [DN 18-29] at 1.) He stated that "either I was terminated on 10/30/15 for reasons not yet specified; or my two week resignation that would have been effective 11/1/15 was accepted by ELITE." (*Id.*) Duran responded by stating that, "On Oct 23rd, you submitted notice of intent to resign from your position with ELITE due to an inability to consistently meet the basic requirements of the job. ELITE chose to forgo your notice and dismiss you earlier than your requested last day of employment (end of 2015) based on your lack of performance and your unprofessional treatment of coworkers and ELITE customer(s)." (*Id.*)

On October 29 and 30, McLeish was 52 years old. (Dep. McLeish [DN 18-4] at 27:19–21.) Elite's operations at the Crowne Plaza were temporarily managed by Antonio Allen, a 23-year-old male, after McLeish's employment ended, but Elite ultimately filled McLeish's former position with an unnamed 32-year-old male. (Lucas Aff. [DN 18-12] ¶ 10.)

McLeish filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in Kentucky. (EEOC Dismissal and Notice of Rights [DN 18-30] at 1.) This charge was dismissed, and McLeish subsequently filed the present complaint against Elite, alleging that he was terminated due to his age in violation of the Age Discrimination in

Employment Act ("ADEA") and the Kentucky Civil Rights Act ("KCRA"). Elite has now moved for summary judgment as to both claims. (DN 18.)

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

Under the ADEA, it is "unlawful for an employer to . . . discharge any individual . . . because of such individual's age[.]" 29 U.S.C. § 623(a)(1). Likewise, the KCRA makes it unlawful to discharge any individual "because of the individual's . . . age forty (40) and over[.]" KRS § 344.040(1)(a). Because "[c]laims brought under the KCRA are analyzed in the same manner as ADEA claims," the Court will address both claims under the framework of the ADEA. *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393 (6th Cir. 2008) (quotations omitted).

A plaintiff asserting a claim of age discrimination has the burden of persuasion to show that "age was the 'but-for' cause of the employer's" decision to terminate. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009). This may be established "by either direct or circumstantial evidence." *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). McLeish limits his argument to only circumstantial evidence of age discrimination. (Pl.'s Resp. to Mot. for Summ. J. [DN 27] at 7.) When only circumstantial evidence is presented, "the claim is analyzed using the burden-shifting framework of *McDonnell Douglas Corp. v. Green*[.]" *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012). "Under *McDonnell Douglas* and its progeny, once the plaintiff succeeds in making out a prima facie case of age discrimination, the defendant must articulate some legitimate, nondiscriminatory reason for the termination." *Id.* (quotations omitted). "If the defendant meets this burden, then the burden of production shifts back to the plaintiff to demonstrate that the proffered reason is a pretext." *Id.* (citations omitted).

A plaintiff must establish four elements to make out a prima facie case of age discrimination: "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of

discrimination." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). There is no dispute that McLeish was a member of a protected group, as the ADEA's protections are "limited to individuals who are at least 40 years of age." 29 U.S.C. § 631(a). And while Elite challenges whether there are circumstances that support an inference of discrimination, the Sixth Circuit has noted that "[a]ge differences of ten or more years have generally been held to be sufficiently substantial to meet the requirement of the fourth part of age discrimination prima facie case." *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003) (compiling cases). McLeish was 52 when his employment ended; he was initially replaced by a 23-year-old individual, and a 32-year-old individual replaced him on a permanent basis. Whether the age difference is considered to be 20 or 29 years, it is sufficient to create an inference of age discrimination.

The parties contest whether McLeish has met the other two elements of his prima facie case. First, Elite argues that McLeish was not qualified for his position. It points to his subpar job performance and McLeish's own admissions that "[t]his position needs a great administrator[, and] I am not that person." (McLeish October 23 Email [DN 18-23] at 1.) McLeish instead points to his experience in the field and years of work that demonstrate he was qualified "for the position of Director of A.V. at Elite," but not necessarily at the Crowne Plaza. (Pl.'s Resp. to Mot. for Summ. J. [DN 27] at 8.) Further, Elite argues that no adverse action was ever taken against McLeish, as he resigned his position voluntarily. It points to the October 14 email from McLeish in which he provided three scenarios for the end of his employment with Elite and included no scenario in which he remained in his position beyond the end of 2015. McLeish responds by pointing to his repeated denials in his deposition that he ever resigned.

The Court need not resolve whether McLeish has satisfied these remaining elements of his prima facie case, because even if one assumes that he has, Elite has sufficiently rebutted this

showing by detailing the nondiscriminatory reasons for which McLeish was terminated. The record indicates that employees of the Crowne Plaza were not satisfied with McLeish's performance, as he routinely failed to ensure that meeting rooms were properly set up with their audio and visual needs in a timely manner. (Falkenstein September 30 Email [DN 18-10] at 2; Falkenstein October 8 Email [DN 10-14] at 1.) His superior at Elite, Lucas, attempted to work with McLeish and implement changes that would rectify the complaints, but McLeish's poor performance continued. (Lucas October 8 email [DN 18-15] at 1–4; Falkenstein October 12 Email [DN 18-16] at 1.) Elite's president spent time at the Crowne Plaza and concluded that McLeish was not performing his job in a satisfactory manner. (Williams October 22 Email [DN 18-22] at 2–4.) McLeish himself notified his superiors that he was not meeting the requirements of the job and was seeking to leave. (McLeish October 14 Email [DN 18-17] at 1; McLeish October 23 Email [DN 18-23] at 1.) Finally, McLeish sent an email telling another coworker to "fuck off." (McLeish October 28 Email [DN 18-25] at 2.) McLeish was told he was being let go within two days of sending this email. (Dep. McLeish [DN 18-4] at 175:18–23; Lucas Aff. [DN 18-12] ¶ 7.) Thus, Elite has sufficiently presented its nondiscriminatory reasons for terminating McLeish: his on-the-job performance was inadequate, and he behaved in a disrespectful manner towards his coworkers.

McLeish makes no attempt to argue that these nondiscriminatory reasons are pretextual, despite the plaintiff having the burden to produce "sufficient evidence from which a jury could reasonably reject [the employer's] explanation" for the termination. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). Further, the Court has reviewed the record, and there is insufficient evidence to establish pretext. "A plaintiff generally can show that the stated reason was not the real reason by showing that it (1) has no basis in fact, (2) did not actually motivate

the adverse employment decision, or (3) was insufficient to motivate discharge." *Moffatt v. Wal-Mart Stores, Inc.*, 624 F. App'x 341, 347 (6th Cir. 2015) (citing *Blizzard*, 698 F.3d at 285.) As to the first potential demonstration of pretext, the record clearly shows that McLeish was in fact performing his job poorly and that he sent the disrespectful email to Forrest. Thus, these nondiscriminatory reasons for his termination have a basis in fact. Second, the record also shows that Elite was actually motivated to terminate McLeish due to his poor performance and disrespectful behavior towards his coworkers, as opposed to some other reason. There is ample evidence that both McLeish and his superiors knew that he was not performing his job adequately and that McLeish feared being terminated before his intended date of resignation due to his poor performance. McLeish was also terminated within days of his email to Forrest, a timing that suggests Elite was in fact motivated to terminate him for that reason. And third, the record indicates that McLeish's performance and behavior were sufficient reasons to terminate him. McLeish has made no argument that he should not have been terminated for not meeting the expectations of Elite and the Crowne Plaza, nor has he argued that his email to Forrest was not grounds for termination.

The only evidence of age-based discrimination in the record is statements made by Forrest calling McLeish a "fat old woman" and questioning his ability to pick up equipment because of his age. (Dep. McLeish [DN 18-4] at 189:8–190:20.) The Sixth Circuit has acknowledged that "discriminatory remarks, even by a nondecisionmaker, can serve as probative evidence of pretext." *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 393 (6th Cir. 2009). But for these statements to be probative, they must be related to the actual decision to terminate McLeish. *Blizzard*, 698 F.3d at 287 (citing *Geiger*, 579 F.3d at 621.) The only time frame in the record for when these statements were made is May or June of 2015, before McLeish had even

9

begun his employment at the Crowne Plaza and at least four months before he was terminated. (Dep. McLeish [DN 18-4] at 190:11–17.) Thus, these statements are "unrelated to the decision to dismiss," and as such, "they do not constitute evidence of discrimination." *Blizzard*, 698 F.3d at 287. *See Scola v. Publix Supermarkets, Inc.*, 557 F. App'x 458, 467 (6th Cir. 2014) (summary judgment appropriate when comments by coworker calling plaintiff an "old lady" were unrelated to decision to terminate plaintiff).

Elite has meticulously provided evidence showing that McLeish was terminated for his poor job performance and disrespectful behavior towards his coworkers. The burden is on McLeish to produce some evidence showing these reasons are a pretext for having actually terminated him due to his age, but he has produced no such evidence. As such, no reasonable juror could conclude that "age was the 'but-for' cause" of McLeish's termination. *Gross*, 557 U.S. at 177. Therefore, the motion for summary judgment by Elite is **GRANTED**.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion for summary judgment by defendant Elite Audio Visual Solutions (DN 18) is **GRANTED**.

cc: counsel of record